**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DEMETRIUS JONES, | ) | CASE NO. 1:14CV2549 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| ALAN LAZAROFF, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Demetrius Jones, ("Jones"), challenges the constitutionality of his conviction in the case of *State v. Jones*, Cuyahoga County Court of Common Pleas Case No. CR-524453. Jones, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on November 19, 2014. On February 10, 2015, Warden Alan Lazaroff ("Respondent") filed his Answer/Return of Writ. (Doc. No. 7.)

Meanwhile, on November 21, 2014, on behalf of Jones, the Office of the Federal Public Defender ("FPD"), filed a Motion seeking appointment as counsel. (Doc. No. 3.) On February 13, 2015, the Court ordered the FPD to provide "a more detailed and meaningful explanation of why it believes the interests of justice require appointment of counsel in the instant case." (Doc. No. 8.) On February 27, 2015, a Supplement to the Motion was filed that provided further

argument regarding the basis for the request.  (Doc. No. 10.)  Respondent filed a brief in

opposition on March 6, 2015.  (Doc. No. 11.)

Thereafter, on March 10, 2015, the Court issued an Order granting Jones' motion in part.

(Doc. No. 12.)  Specifically, the Court found that "the FPD appears to acknowledge that Jones'

claims would be procedurally defaulted unless he can establish cause for said default pursuant to

the recent decision of the United States Supreme Court in *Martinez v. Ryan*, 133 S.Ct. 1309

(2012)."  *Id.* at 2.  The Court then granted a limited appointment of counsel as follows:

> Given the uncertainty over whether Jones' potential default may be excused, the
> Court finds the interests of justice require a limited appointment of counsel in this
> matter.  Counsel's appointment is confined to addressing the issue of whether
> Jones' claims are procedurally defaulted and whether Jones can establish cause
> and prejudice to excuse any default.  Petitioner's Traverse must be filed within
> thirty (30) days of this Order.  The Respondent shall have fourteen (14) days
> thereafter to file a reply, which also must be confined to the issue of procedural
> default.  In the event the petition is found not to be procedurally defaulted, the
> Court will determine whether the interests of justice require appointment of
> counsel to address the merits of any claims.

*Id.* at 3.

On May 22, 2015, Jones, through counsel, filed a "Brief As to Whether His Habeas

Claims are Defaulted."  (Doc. No. 15.)  After receiving two extensions, Respondent replied on

June 25, 2015.  (Doc. No. 18.)

Thereafter, on September 14, 2015, the Court issued an Order as follows:

> The Court has reviewed the parties' submissions and is prepared to rule on the
> issue of procedural default.  In the meantime, the Court directs Petitioner to brief
> the merits of Grounds One and Two only, which the Court construes as a single
> ground challenging the constitutionality of Jones' conviction on the basis that the
> allegedly inconsistent jury verdicts violated his federal due process rights.
> Specifically, Petitioner is directed to address Respondent's arguments that this
> claim is noncognizable or, in the alternative, without merit under the
> Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §
> 2254.

-2-

The limited appointment of the Office of the Federal Public Defender is extended to include the merits briefing noted above.  Petitioner, through counsel, shall have thirty (30) days to submit his merits briefing on this claim.

(Doc. No. 19 at 2-3.)  Jones filed his "Merit Brief for Claims One and Two" on October 13, 2015.

(Doc. No. 20.)  After obtaining leave to do so, Respondent filed a Reply on November 2, 2015.

(Doc. No. 22.)

For the following reasons, it is recommended that Grounds 3, 4, 5 and 6 of Jones' Petition be dismissed as procedurally defaulted.  With respect to Grounds 1 and 2, it is recommended the Court find that these grounds assert the same claim; i.e., that Jones' federal due process rights were violated by the alleged inconsistency of the jury's verdicts in his underlying state court trial. It is further recommended that Grounds 1 and 2 be dismissed as non-cognizable.  Accordingly, it is recommended Jones' Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Jones's conviction as follows:

Jones was charged with one count of murder in violation of R.C. 2903.02(B), and one count of felonious assault in violation of R.C. 2903.11(A)(1). The charges arose from the homicide of his girlfriend's one-year-old baby.  The murder count alleged that Jones "did cause the death of [C.G.], as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree, to wit: Felonious Assault, in violation of Section 2903.04(A)(9) of the Revised Code."  The felonious assault count alleged that Jones "did knowingly cause serious physical harm to [C.G.]."

-3-

*State v. Jones*, 2012 WL 760446 at * 1 (Ohio App. 8th Dist. March 8, 2012).[1]

## II. Procedural History

### A.    Conviction

In May 2009, a Cuyahoga County Grand Jury charged Jones with one count of murder in violation of Ohio Revised Code ("O.R.C.") § 2903.02(B) together with a specification that the victim was under the age of 13; and, one count of felonious assault in violation of O.R.C. § 2903.11(A)(1).  (Doc. No. 7-1, Exh. 1.)  Jones pled not guilty.  (Doc. No. 7-1, Exh.2.)

On August 19, 2009, Jones (through appointed counsel William W. Thompson IV) filed a Motion for Appointment of Forensic Pathologist, arguing "it is beyond contention that evidence relating to the cause and manner of death is the critical issue in this case."  (Doc. No. 7-1, Exh. 3.)  The trial court granted Jones' motion, over the objection of the prosecutor.[2]  (Doc. No. 7-1, Exh. 4.)  Jones then filed a motion for appointment of a criminal investigator, which was granted on July 15, 2010.  (Doc. No. 7-1, Exhs. 5, 6.)  Subsequently, in August 2010, Jones' request to refer him for a sanity and competency evaluation was also granted.  (Doc. No. 7-1, Exh. 7.)

_____

[1] The state appellate courts did not provide any further detail regarding the underlying facts in this matter.  The trial transcript reveals the following.  At the time of the offense, Jones was living with the mother of C.G., a one year old boy.  (Tr. Vol. III, P. 532-533, 539, 552.)  On March 24, 2009, C.G.'s mother left C.G. in Jones' care when she went to work.  *Id*. at 543-545.  While in Jones' care, C.G. was transported to Hillcrest Hospital Emergency room and, later, life flighted to the Cleveland Clinic where he was pronounced dead.  *Id*. at 560-561.  Jones told the police at Hillcrest Hospital that, as he was giving the baby a bottle, the baby started choking and then stopped breathing. *Id*. at 485.  Jones told police he administered CPR on C.G. for five to ten minutes, to no avail.  *Id*. at 493.  At trial, Jones presented the defense that C.G.'s death was caused by choking on milk, or injury from Jones' efforts to revive C.G. via CPR.

[2] In May 2010,  Jones moved for new counsel.  *See* Docket for *State v. Jones*, Cuyahoga County Case No. 09-524453.  The trial court granted the motion, and appointed Russell W. Tye.  *Id.*

-4-

In October 2010, Jones filed a motion to continue the case until he had secured an additional medical expert.  *See* Docket for *State v. Jones*, Cuyahoga County Case No. 09-524453.  The trial court granted the motion, allowing Jones an additional 45 days in which to locate a second medical expert.[3]  *Id.*

The case proceeded to jury trial on May 4, 2011.  *See* Docket for *State v. Jones*, Cuyahoga County Case No. 09-524453.  Seven days later, on May 11, 2011, the jury found Jones guilty of murder in violation of Ohio Rev. Code § 2903.02(B), but not guilty of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1).[4]  (Doc. No. 7-1, Exh. 12.)  After the verdict was delivered, Jones orally moved for an acquittal, arguing "[i]t would appear that the verdicts are so inconsistent, if you're not guilty of felonious assault, you can't be guilty of the murder."  (Doc. No. 7-8 at Tr. 1069-1070.)  The trial court held the motion in abeyance and asked the parties to brief the issue.  *Id.  See also* Doc. No. 7-8 at Tr. 1070-1073.

On May 13, 2011, Jones filed a Motion for Acquittal under Criminal Rule 29(C) or, in the alternative, Motion for New Trial pursuant to Ohio Rev. Code § 2945.80.  (Doc. No. 7-1, Exh. 13.)  Therein, Jones argued that "the jury made a mistake in their verdict" because, in order to be convicted of murder under Ohio Rev. Code § 2903.02(B), he would have had to have also been found guilty of felonious assault.  *Id.*  The State opposed Jones' motions.  (Doc. No. 7-1, Exhs. 14, 15.)

---

[3] In December 2010, Jones' appointed counsel moved to withdraw due to "serious irreconcilable differences which cannot be rehabilitated."  (Doc. No. 7-1, Exh. 9.)  The motion was granted and attorney James J. McDonnell was appointed as Jones' counsel. (Doc. No. 7-1, Exh. 10.)

[4] Prior to instructing the jury, the victim under age 13 specification to the murder count was dismissed on motion of the State.  (Doc. No. 7-2, Exhs. 28, 29.)

The trial court conducted hearings on Jones' motions on May 13 and 23, 2011.  (Doc. No. 7-1, Exh. 16; Doc. No. 7-8 at Tr. 1074-1089.)  During these hearings, the trial court indicated it did not consider the jury's murder and felonious assault verdicts to be legally inconsistent but expressed concern about "a miscarriage of justice, with a fair trial being given to Mr. Jones."  (Doc. No. 7-8 at Tr. 1082.)  On May 23, 2011, the trial court issued a Judgment Entry denying Jones' motion for acquittal but granting his motion for new trial, as follows:

> Hearing held in open Court and on the record.  Defendant's motion for acquittal pursuant to Crim. R. 29(C) is hereby denied.  Defendant's motion for a new trial pursuant to Crim. R. 33 and R.C. 2945.80 is hereby granted.  As stated in the oral hearing on May 13, 2011 and May 23, 2011, the Court reiterates that the verdicts returned by the jury are not inconsistent verdicts in accordance with Ohio law. Trial is set for 8-29-11 which is the earliest date possible for prosecutor and defense counsel.

(Doc. No. 7-1, Exh. 16.)

## B.    Direct Appeal

On June 14, 2011, the State filed a Notice of Appeal and Motion for Leave to Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").  (Doc. No. 7-1, Exhs. 17, 18.)  On July 12, 2011, the state appellate court granted the State's motion for leave to appeal.  (Doc. No. 7-1, Exh. 19.)

In its appellate brief, the State raised the following sole assignment of error:

I.    Because Ohio law precludes a finding of inconsistency between a jury's verdicts for multiple counts within the same indictment, the trial court abused its discretion when it granted a new trial on the felony murder count following the jury's verdict of acquittal on the felonious assault count.

(Doc. No. 7-1, Exh. 20.)

Jones (through appellate counsel David L. Doughten) thereafter filed a brief, in which he raised his own assignment of error, as follows:

-6-

I.      Where a defendant is convicted of murder, RC 2903.02(B), which includes
        as an element the offense of felonious assault, R.C. 2903.11(A), the
        conviction is void where the jury has acquitted the defendant of an [sic]
        separate charge of felonious assault based upon the same set of operative
        facts.

(Doc. No. 7-1, Exh. 21.)  Jones did not cross-appeal or raise any additional assignments of error,

explaining as follows:

It is noted here that the trial court did not sentence Jones pursuant to the jury's
guilty verdict for the offense of Murder, R.C. § 2903.02.  Therefore, pursuant to
*State v. Baker*, 119 Ohio St.3d 197, 2008 Ohio 3330, there is no final appealable
order from which Jones can challenge his conviction.  His only option here is to
argue to uphold the trial court's remedy of a new trial based upon her finding that
an inconsistent verdict resulted.

(Doc. No. 7-1, Exh. 21 at PageID 246.)

On March 8, 2012, the state appellate court reversed the trial court's judgment granting a

new trial and ordered that Jones' murder conviction be reinstated.  (Doc. No. 7-1, Exh. 23.)  *See*

*also State v. Jones*, 2012 WL 760446 (Ohio App. 8th Dist. March 8, 2012).

On April 23, 2012, Jones (through new appellate counsel Erika Cunliffe) filed a Notice of

Appeal with the Supreme Court of Ohio.  (Doc. No. 7-1, Exh. 24.)  In his Memorandum in

Support of Jurisdiction, Jones raised the following two Propositions of Law:

I.      Trial Judges are in a position superior to Courts of Appeal when they
        evaluate whether irregularities in the trial proceedings justify a new trial.
        A new trial under Crim. R. 33, and a trial judge's determination that a new
        trial is warranted transcends the traditional deference that courts of appeal
        accord jury verdicts.

II.     When two offenses are charged in separate counts, arising out of the same
        transaction, and one offense includes elements necessary to the
        commission of the other, an acquittal on one count forecloses a conviction
        for the other.

(Doc. No. 7-1, Exh. 25.)  The State waived a response.  (Doc. No. 7-2, Exh. 26.)

-7-

On June 20, 2012, the appeal was dismissed as not involving any substantial constitutional question. (Doc. No. 7-2, Exh. 27.)

### C. Remand to State Trial Court

On remand, the state trial court reinstated Jones' murder conviction and conducted a sentencing hearing on March 12, 2012. (Doc. No. 7-2, Exh. 28.) Jones was sentenced to 15 years to life in prison. *Id.*

### D. Post-Remand Direct Appeal

On April 11, 2012, Jones (through appellate counsel Rufus Sims) filed a Notice of Appeal with the state appellate court. (Doc. No. 7-2, Exh. 30.) In his appellate brief, Jones raised the following sole assignment of error:

> I. Where a defendant is convicted of murder pursuant to R.C. 2903.02(B), and felonious assault is both the key element of the offense and the predicate, the conviction must be overturned where the jury acquitted the defendant of the separate charge of felonious assault.

(Doc. No. 7-2, Exh. 31.) Jones' brief identified three issues encompassed within this assignment of error:

> A. Whether a defendant can be convicted of murder, R.C. 2903.02(B), when the jury acquits him of felonious assault. The key element of the offense beyond a reasonable doubt.
>
> B. Whether the defendant must be acquitted unless the jury finds him guilty beyond a reasonable doubt of every essential element of the offense.
>
> C. Whether the conviction of Appellant was against the manifest weight of the evidence.

*Id.* The State filed a brief in response, and Jones was granted leave to file a reply brief *instanter*. (Doc. No. 7-2, Exhs. 32, 33, 56.)

On February 21, 2013, the state appellate court affirmed Jones' conviction and sentence,

finding that Jones' arguments were barred by the doctrines of law of the case and *res judicata*.
(Doc. No. 7-2, Exh. 34.)  *See also State v. Jones*, 2013 WL 658153 (Ohio App. 8th Dist. Feb. 21,
2013).  Specifically, the appellate court noted Jones "could have filed a cross-appeal in the first
appeal in order to preserve his arguments, but failed to do so."  *Jones*, 2013 WL 658153 at * 2.

On March 1, 2013, Jones (through appellate counsel Rufus Sims) moved for leave to file
a motion for reconsideration *instanter*.  (Doc. No. 7-2, Exh. 35.)  Therein, he raised the
following three issues:

> I.     Whether this Court's reliance on the law of the case doctrine justifies or
>        may be applied to achieve an unjust result or a miscarriage of justice.
>
> II.    Whether the doctrine of *res judicata* may be applied to effect or provide
>        cover for an unjust result.
>
> III.   Appellant's counsel failing to present a competing medical expert amounts
>        to ineffective assistance of counsel.

*Id*.  On April 24, 2013, Jones' motion for reconsideration was denied.[5]  (Doc. No. 7-2, Exh. 38.)

On May 6, 2013, Jones (through appellate counsel Rufus Sims) filed a notice of appeal
with the Supreme Court of Ohio.  (Doc. No. 7-2, Exh. 41.)  In his Memorandum in Support of
Jurisdiction, Jones raised the following two Propositions of Law:

> I.     Where a Defendant is convicted of murder pursuant to R.C. 2903.02(B),
>        and felonious assault is both the key element of the offense and the
>        predicate, the conviction must be overturned where the jury acquitted the

---

[5] The court also noted that leave was not necessary "because the time had not expired to
file a motion for reconsideration."  (Doc. No. 7-2, Exh. 38.)  Meanwhile, on March 20,
2013, Jones (through appellate counsel Erika Cunliffe) filed an "Application for
Reconsideration and Request for *En Banc* Review" from the same February 21, 2013
appellate court decision.  (Doc. No. 7-2, Exh. 39.)  On March 26, 2013, Jones'
application for *en banc* review was denied as untimely.  (Doc. No. 7-2, Exh. 40.)  It is
unclear why two separate motions for reconsideration were filed by two different
attorneys.

Defendant of the separate charge of felonious assault, and the state failed
to establish each count of the indictment beyond a reasonable doubt.

II.      Whether the Defendant was denied his statutory and constitutional right of
first appeal of his conviction for murder pursuant to ORC 2903.02(B).

(Doc. No. 7-2, Exh. 42.)  On September 4, 2013, the Supreme Court of Ohio declined to

accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 7-2, Exh. 43.)

**E.**      **Application to Reopen Appeal**

Meanwhile, on June 18, 2013, Jones (through appellate counsel Erika Cunliffe) filed an

Application to Reopen Appeal Pursuant to App. R. 26(B) in the state appellate court.  (Doc. No.

7-2, Exh. 44.)  Therein, Jones argued appellate counsel was ineffective for failing to raise the

following assignments of error on appeal:

I.      Admission of the autopsy report and testimony from a doctor who did not
perform that autopsy violated Mr. Jones' Sixth and Fourteenth
Amendment right to confrontation.

II.      Trial counsel's various acts and omissions deprived Mr. Jones of his right
to the effective assistance of counsel guaranteed by the Sixth Amendment
and but for counsel's lapses there is a reasonable probability that the
case's outcome would have been different.

A.      Trial counsel requested the wrong lesser/inferior offense jury
instruction.

B.      Trial counsel should have challenged the constitutionality of R.C.
2903.02(B).

*Id.*  Jones acknowledged the Application was untimely but argued there was good cause for the

delay for the following reasons: "On direct appeal and, currently, before the Ohio Supreme

Court, Mr. Jones is represented by Rufus Sims.  Mr. Sims is under no obligation to raise issues

of his own ineffectiveness either to the Supreme Court of Ohio or this Court now. * * *  Thus,

during the ninety-day period circumscribed by App. R. 26(B), [Jones] was still represented by

original appellate counsel who could not raise the issue of ineffective assistance of appellate counsel against himself.  * * *  Nevertheless, concerns about the paucity of issues raised in this direct appeal – from a jury trial, no less– prompted Mr. Jones to contact this office for assistance. Undersigned counsel reviewed the six volume transcript and filed this application as soon as practicable.  Under the circumstances, there is good cause for the untimely filing of this Application to Reopen."[6]  *Id.*  The State opposed Jones' Application.  (Doc. No. 7-2, Exh. 45.)

On October 23, 2013, the state appellate court denied Jones' Application on the grounds that it was untimely and Jones had failed to show good cause for the late filing.  (Doc. No. 7-2, Exh. 46.)

On November 27, 2013, Jones (through appellate counsel Jeffrey Gamso) filed a notice of appeal with the Supreme Court of Ohio.  (Doc. No. 7-2, Exh. 47.)  In his Memorandum in Support of Jurisdiction, Jones raised the following Propositions of Law:

> I.   The trial court violates the accused's right to confrontation when it permits the introduction of the autopsy report and findings through a witness who was neither present for nor performed the autopsy.
>
> II.  Trial counsel's various acts and omissions deprived the accused of his right to the effective assistance of counsel guaranteed by the Sixth Amendment and warrant relief where, but for counsel's lapses, there is a reasonable probability that the case's outcome would have been different.
>
> III. An appellant's right to the effective assistance of counsel is violated when direct appeal counsel's performance is deficient and the appellant suffers prejudice as a result.  U.S. Const. Amends. VI and XIV, Ohio Const. Art.

---

[6] In an Affidavit attached to the Application, appellate counsel Cunliffe also states that the application was late because she miscalculated the filing deadline.  (Doc. No. 7-2, Exh. 44.) Ms. Cunliffe further states that, even if she had known the proper due date, she would have had difficulty timely filing the application due to "an overwhelming case load" and an inability to obtain "important reports in this case from previous counsel." *Id.*

I, § 10.

IV.     Insofar as an Application to Reopen was dismissed for untimely filing
        beyond the 90 day period, equitable tolling principals apply to permit the
        Application's consideration where circumstances warrant such tolling.

(Doc. No. 7-2, Exh. 48.)  The State filed a brief in opposition.  (Doc. No. 7-2, Exh. 49.)

On February 19, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the

appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 7-2, Exh. 50.)

### F.     Petition to Vacate or Set Aside Judgment of Conviction

Meanwhile, on December 13, 2012, Jones filed a *pro se* Petition to Vacate or Set Aside

Judgment of Conviction in the state trial court.  (Doc. No. 7-2, Exh. 51.)  Therein, Jones raised

the following claims:

I.      I was deprived of my Sixth Amendment right to counsel because my trial
        counsel was ineffective.  Medical experts testify at my trial and my didn't
        [sic].

II.     My Sixth Amendment constitution [sic] right was violated due to
        ineffective counsel.  My private investigator never testified.

*Id.*  The State opposed the Petition on February 19, 2013.  (Doc. No. 7-2, Exh. 52.)  As of the

date of this Report & Recommendation, Jones' Petition has not been ruled upon by the state trial

court.

### G.     Federal Habeas Petition

On November 19, 2014, Jones filed a *pro se* Petition for Writ of Habeas Corpus and

asserted the following grounds for relief:

I.      "When two offenses are charged in separate counts arising out of
        the same transaction, and one offense includes elements necessary
        to the commission of the other, due process and the bar against
        double jeopardy requires that an acquittal on one count forecloses
        a conviction for the other. * * *  Petitioner's conviction violates

-12-

the Fifth Amendment's Due Process Clause because the state has failed to prove every element beyond a reasonable doubt. The Eighth District's opinion upholding that conviction is also based on a legal construction that violates Double Jeopardy by permitting the State to punish the accused twice for a single act. The Fifth Amendment requires the prosecutor to prove every element of a crime beyond a reasonable doubt."

II.     "Under the Fifth, Sixth, and Fourteenth Amendments, a conviction must rest on a finding of guilt on all elements of an offense beyond a reasonable doubt.  Where a Defendant is convicted of murder pursuant to O.R.C. 2903.02(B) and felonious assault is both the key element and the predicate, the conviction must be overturned where the jury acquitted the Defendant of the separate charge of felonious assault.  Jones was convicted of a crime where the jury unanimously determined that he is not guilty of one of its elements. Since the jury unanimously determined that Jones was not guilty beyond a reasonable doubt of the key element of felonious assault, his conviction on the murder charge cannot stand."

III.    "The trial court violated Petitioner's right to confrontation when it permitted the introduction of the autopsy report and findings through a witness who was neither present for nor performed the autopsy."

IV.     "Trial counsel's various acts and omissions deprived Petitioner of his right to the effective assistance of counsel guaranteed by the Sixth Amendment and warrant relief where, but for counsel's lapses there is reasonable probability that the case's outcome would have been different."

        A.     Failure to object to the autopsy report and related evidence on Confrontation Grounds.

        B.     Trial counsel requested the wrong lesser/inferior offense jury instructions.

        C.     Trial counsel should have challenged the constitutionality of R.C. 2903.02(B).

V.      "Petitioner's right to the effective assistance of appellate counsel was violated when direct appeal counsel's performance was deficient and the Appellant suffers prejudice as a result. U.S.

-13-

Const. Amends. VI and XIV, Ohio Const. Art. I, § 10.  For the same reasons that trial counsel should have objected to or otherwise addressed the issues set forth above, appellate counsel should have presented them to the Eighth District."

VI.  "Insofar as an Application to Reopen was dismissed for untimely filing beyond the 90-day period, equitable tolling principals should have applied in Petitioner's case to permit consideration of his Application where circumstances warrant such tolling."

(Doc. No. 1-2.)

On February 10, 2015, Respondent filed his Answer/Return of Writ.  (Doc. No. 7.)  As set forth above, and in response to an Order of this Court, Jones, through counsel, filed a "Brief As to Whether His Habeas Claims are Defaulted" on May 22, 2015.  (Doc. No. 15.)  After receiving two extensions, Respondent replied to Jones' Brief on June 25, 2015.  (Doc. No. 18.)

On September 14, 2015, the Court issued an Order directing Jones "to brief the merits of Grounds One and Two only, which the Court construes as a single ground challenging the constitutionality of Jones' conviction on the basis that the allegedly inconsistent verdicts violated his federal due process rights."  (Doc. No. 19 at 2-3.)  Specifically, the Court ordered Jones to "address Respondent's arguments that this claim is noncognizable or, in the alternative, without merit under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254."  *Id*. at 3.

Jones filed his "Merit Brief for Claims One and Two" on October 13, 2015.  (Doc. No. 20.)  After obtaining leave to do so, Respondent filed a Reply on November 2, 2015.  (Doc. No. 22.)

### III.  Exhaustion and Procedural Default

**A.      Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas

-14-

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

### B.    Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[7] *Id.*

---

[7] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court.

---

can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).  "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

-16-

To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6ᵗʰ Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6ᵗʰ Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6ᵗʰ Cir. 2003).

        A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6ᵗʰ Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6ᵗʰ Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6ᵗʰ Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v.*

*Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S.

-18-

362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the

Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

## V.  Analysis

### A.  Grounds 3, 4 and 6

In his third ground for relief, Jones asserts his Sixth Amendment right to confrontation was violated when the State was permitted to introduce autopsy results through a witness who did not actually perform the autopsy.  (Doc. No. 1-2.)  Jones' fourth ground for relief asserts ineffective assistance based on trial counsel's failure to (1) object to the testimony regarding the autopsy report; (2) request the proper jury instructions; and, (3) challenge the constitutionality of Ohio Rev. Code § 2903.02(B).  *Id*.  Lastly, in his sixth ground for relief, Jones appears to assert ineffective assistance of counsel based on post-conviction counsel's failure to timely file his App.

-20-

R. 26(B) Application.  *Id.*

In his "Brief as to Whether his Habeas Claims are Defaulted," Jones expressly acknowledges that Grounds 3, 4, and 6 are procedurally defaulted "and should be dismissed by this Court."[8]  (Doc. No. 15 at 3.)  Not surprisingly, Respondent agrees.  (Doc. No. 18 at 1.)

In light of the above, and based on its own review of the record, the Court agrees that Jones' third, fourth, and sixth grounds for relief are procedurally defaulted.  The Court further finds Jones has failed to establish cause and prejudice to excuse the default and, further, has failed to set forth any argument that he is actually innocent.

Accordingly, it is recommended that Grounds 3, 4, and 6 be dismissed as procedurally defaulted.

**B.     Ground 5**

In his fifth ground for relief, Jones asserts that his direct appeal counsel was ineffective for (1) "fail[ing] to mount the Confrontation Clause challenge [regarding the autopsy report]; and (2) failing to challenge trial counsel's lapses– [i.e.,] not raising a confrontation objection to the autopsy report and testimony, not raising a constitutional challenge to the Murder (B) statute, and failing to request the proper jury instructions."  (Doc. No. 1-2 at 9.)

It is undisputed that Jones failed to raise any of these arguments[9] in his direct appeal from

---

[8] Moreover, Jones does not argue there is cause and prejudice to excuse the default.

[9] In his Brief regarding Procedural Default, Jones characterizes his fifth ground for relief as raising ineffective assistance of appellate counsel based solely on appellate counsel's failure to "mount a challenge to the violation of his rights under the Confrontation Clause, and [failure] to challenge the admission of the autopsy report."  (Doc. No. 15 at 26.)  It thus appears that Jones has abandoned the additional appellate counsel claims raised in his Petition, as set forth above.  Regardless, Jones does not dispute that none of the ineffective assistance of appellate counsel claims asserted in ground five were

the trial court's post-remand reinstatement of his murder conviction and sentencing.[10]  *See* Doc. No. 15 at 27; Doc. No. 7-2, Exhs. 31, 42.  Rather, Jones first attempted to raise these issues in his App. R. 26(B) Application.  (Doc. No. 7-2, Exh. 44.)  The state appellate court denied Jones' Application on the grounds that it was untimely and Jones failed to show good cause for the late filing.  (Doc. No. 7-2, Exh. 46.)  Specifically, the state appellate court held as follows:

> Demetrius Jones has filed an application for reopening pursuant to App. R. 26(B).  Jones is attempting to reopen the appellate judgment rendered in *State v. Jones*, 8th Dist. Cuyahoga No. 98209, 2013-Ohio-572, which affirmed his conviction for murder.  His application is untimely, without establishing good cause for the delay, and therefore must be denied.
>
> App. R. 26(B)(2)(b) requires that Jones establish a showing of good cause for untimely filing if the application is filed more than 90 days after journalization of the appellate judgment that is subject to reopening. * * *
>
> The appellate judgment that Jones seeks to reopen was journalized on February 21, 2013. The application for reopening was not filed until June 18, 2013, and beyond the 90-day deadline for reopening.
>
> Jones contends that there is good cause for his untimely filing based on the fact that his appellate counsel continued to represent him in proceedings before the Ohio Supreme Court.  Jones maintains that his appellate counsel cannot be expected to raise his own ineffectiveness. This argument has been repeatedly raised and rejected, and it does not constitute good cause for an untimely application.  *Gumm* at ¶ 3; *State v. Wilcox*, 8th Dist. Cuyahoga No. 96079, 2013-Ohio-2895.  Likewise, "the excuse that [the applicant] and his attorneys were occupied with other appeals or that they simply neglected to pay attention to the rule is not 'good cause' for missing the filing deadline." *Id.*  Consequently, neither counsel's mistake in calculating the deadline nor counsel's heavy caseload can establish the requisite good cause that would enable us to consider

raised on direct appeal.

[10] It is also undisputed that Jones did not cross-appeal when the State appealed the trial court's judgment entry granting Jones a new trial, nor did Jones raise the above issues in his appellate brief filed in response to the State's appeal.  (Doc. No. 7-1, Exh. 21.) As set forth *supra,* Jones maintained that he was prohibited from filing a cross-appeal under Ohio law.

-22-

the untimely application for reopening.

Jones has failed to establish "a showing of good cause" for the untimely filing of his application for reopening.  *State v. Klein*, 8th Dist. Cuyahoga No. 58389, 1991 Ohio App. LEXIS 1346 (Apr. 8, 1991), *reopening disallowed* (March 15, 1994), Motion No. 49260, *aff'd* 69 Ohio St.3d 1481, 634 N.E.2d 1027 (1994); *State v. Trammell*, 8th Dist. Cuyahoga No. 67834, 1995 Ohio App. LEXIS 2962 (July 24, 1995), *reopening disallowed* (Apr. 22, 1996), Motion No. 70493; *State v. Travis*, 8th Dist. Cuyahoga No. 56825, 1990 Ohio App. LEXIS 1356 (Apr. 5, 1990), *reopening disallowed* (Nov. 2, 1994), Motion No. 51073, *aff'd* 72 Ohio St.3d 317, 1995-Ohio-152, 649 N.E.2d 1226.  *See also State v. Gaston*, 8th Dist. Cuyahoga No. 79626, 2007-Ohio-155; *State v. Torres*, 8th Dist. Cuyahoga No. 86530, 2007-Ohio-9.

Accordingly, the application for reopening is denied.

(Doc. No. 7-2, Exh. 46.)  Jones appealed this judgment; however, the Supreme Court of Ohio declined to accept jurisdiction.  (Doc. No. 7-2, Exhs. 47, 48, 50.)

In his Brief regarding Procedural Default, Jones concedes that, because the state appellate court dismissed his App. R. 26(B) Application on procedural grounds, his ineffective assistance of appellate counsel claims are procedurally defaulted.  (Doc. No. 15 at 27, 29.)  Jones argues, however, that he can "overcome the default" because his post-conviction counsel was ineffective when she filed Jones' Application outside the 90-day filing deadline.  *Id.*  Relying heavily on *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), Jones maintains "the ineffective assistance of [his] post-conviction counsel constitutes cause and prejudice to overcome the procedural default and allows this Court to hear the merits of his ineffective assistance of appellate counsel claim."  *Id.*

In *Martinez*, the Supreme Court considered "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance **at trial** may provide cause for a procedural default in a federal habeas proceeding."  *Martinez*, 132. S.Ct. at 1315 (emphasis

-23-

added).  Martinez was convicted in Arizona state court of two counts of sexual conduct with a minor under the age of 15.  *Id.* at 1313.  On direct appeal, Martinez's counsel made numerous arguments on Martinez's behalf but did not raise the claim that trial counsel was ineffective.  *Id.* at 1314.  This was because Arizona law did not permit ineffective assistance of trial counsel claims to be raised on direct appeal, requiring instead that they be reserved for state collateral proceedings.  *Id.*  While Martinez's direct appeal was pending, the same attorney filed a notice of post-conviction relief but, again, did not raise any claim that trial counsel was ineffective.  *Id.* Rather, counsel filed a statement asserting she could find no colorable claims.  *Id.*  The state trial court dismissed Martinez's post-conviction petition; the Arizona Court of Appeals affirmed Martinez's conviction; and, the Arizona Supreme Court denied review.  *Id.*

Martinez subsequently filed, through new counsel, a second notice of post-conviction relief in the state trial court, in which he claimed trial counsel had been ineffective for failing to challenge the prosecutor's evidence.  *Id.*  Martinez's petition was dismissed, in part in reliance on an Arizona Rule barring relief on a claim that could have been raised in a previous collateral proceeding.  *Id.*  The state appellate court agreed, and the state supreme court declined to review Martinez's appeal.  *Id.*

Martinez then filed a habeas petition in federal district court, again raising the argument that his trial counsel had been ineffective.  Martinez acknowledged this claim was procedurally defaulted, but maintained that he "could overcome his hurdle to federal review . . . because he had cause for the default: His first postconviction counsel was ineffective in failing to raise any claims in the first notice of postconviction relief."  *Id.* at 1314-1315.  The district court found Martinez had not shown cause to excuse the default on the grounds that, under *Coleman v. Thompson*, 501

-24-

U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), attorney errors in a postconviction proceeding do not qualify as cause.  *Id.* at 1315.  The Ninth Circuit Court of Appeals affirmed.  *Id.*

On review, the Supreme Court acknowledged its holding in *Coleman*, but noted that *Coleman* did not determine "whether attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default."  *Id.* at 1316.  The Court explained that, "[w]here, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim."  *Id*. at 1317.  The Court further reasoned that "[a] prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel," noting that "the right to the effective assistance of counsel at trial is a bedrock principle in our justice system."  *Id*.

The Court then found as follows:

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim.  From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.  The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf. Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

*Id*. at 1318-1319.  In so holding, however, the Court emphasized that the circumstances outlined

above constituted a "narrow exception" to *Coleman*, stating:

> The rule of *Coleman* governs in all but the limited circumstances recognized here.
> The holding in this case does not concern attorney errors in other kinds of
> proceedings, including appeals from initial-review collateral proceedings, second
> or successive collateral proceedings, and petitions for discretionary review in a
> State's appellate courts.  *See* 501 U.S., at 754, 111 S.Ct. 2546; *Carrier*, 477 U.S.,
> at 488, 106 S.Ct. 2639.  It does not extend to attorney errors in any proceeding
> beyond the first occasion the State allows a prisoner to raise a claim of ineffective
> assistance at trial, even though that initial-review collateral proceeding may be
> deficient for other reasons.
>
> In addition, the limited nature of the qualification to *Coleman* adopted here
> reflects the importance of the right to the effective assistance of trial counsel and
> Arizona's decision to bar defendants from raising ineffective-assistance claims on
> direct appeal.  Our holding here addresses only the constitutional claims presented
> in this case, where the State barred the defendant from raising the claims on direct
> appeal.

*Id*. at 1320.[11]

   Here, Jones argues the state appellate court "was prevented from hearing [his] claim of

ineffective assistance of appellate counsel because his post-conviction counsel failed to timely

file his Application to Reopen the Appeal under Appellate Rule 26(B)."  Thus, Jones claims, "his

post-conviction counsel's mistake is the sole reason for the procedural default."  (Doc. No. 15 at

31.)  Jones asserts "[t]his is the exact factual and legal scenario the Supreme Court dealt with" in

*Martinez.  Id.*  He states his "first and only opportunity to raise his appellate counsel's

ineffectiveness claims arising from his direct appeal was in his Rule 26(B) Application" and,

---

[11]Although not cited by *Jones*, the Court notes that the Supreme Court expanded the
exception set forth in *Martinez* to apply where the "design and operation" of a state's
procedural framework permits but "makes it highly unlikely in a typical case that a
defendant will have a meaningful opportunity to raise a claim of ineffective assistance of
trial counsel on direct appeal."  *Trevino v. Thaler*, 133 S.Ct. 1911, 1921 (2013).

therefore, post-conviction counsel's failure to timely file the Application "deprived him of the singular opportunity to receive a merits review" of these claims.  *Id*. at 35.  Jones argues "[t]his is the epitome of cause under *Martinez*" and his procedural default of Ground Five should be excused.  *Id*.

The Court disagrees.  As Respondent correctly notes, in this Circuit, it is well established that *Martinez* does not allow the ineffectiveness of postconviction counsel to supply cause for the procedural default of a claim of ineffective assistance of **appellate** counsel.  *See Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013).  In *Hodges*, the Sixth Circuit explained as follows:

> Nor can Hodges rely on ineffective assistance of post-conviction counsel to establish cause to excuse his default, even if this holding is not so clear-cut as it once would have been.  Historically, the federal courts have held that there is no constitutional right to an attorney in post-conviction proceedings, and that ineffective assistance of post-conviction counsel therefore cannot establish cause for procedural default.  *See Carpenter*, 529 U.S. at 450–53, 120 S.Ct. 1587; *Coleman*, 501 U.S. at 752, 111 S.Ct. 2546; *Landrum*, 625 F.3d at 919.  But the Supreme Court recently held in *Martinez v. Ryan*, —— U.S. ——, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), that there is a "narrow exception" to *Coleman*: "Inadequate assistance of counsel at initial review collateral proceedings may establish cause for a procedural default of a claim of ineffective assistance *at trial*."  *Id*. at 1315 (emphasis added).  This "equitable"—as opposed to constitutional—exception is premised on *Coleman* itself, a case in which the Court declined to address the situation in which "state collateral review is the first place a prisoner can present a challenge to his conviction."  *Coleman*, 501 U.S. at 755, 111 S.Ct. 2546.  The *Martinez* Court held that in such situations ineffective assistance of post-conviction counsel may be raised as cause to excuse procedural default because "the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective assistance claim."  *Martinez*, 132 S.Ct. at 1317.
>
> The Court in *Martinez* purported to craft a narrow exception [footnote omitted] to *Coleman*.  We will assume that the Supreme Court meant exactly what it wrote: "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel *at trial*."  *Id*. at 1316 (emphasis added).

-27-

* * *

> We will address Hodges's claims of ineffective assistance of *trial* counsel in a different section, but here he claims ineffective assistance of post-conviction counsel as cause to excuse default of his claim of ineffective assistance of *appellate* counsel for failure to raise the juror misconduct issue on direct appeal. **Under *Martinez* 's unambiguous holding our previous understanding of *Coleman* in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel.** *See, e.g., Landrum*, 625 F.3d at 919.

*Id*. at 530-531 (emphasis added).  *See also Abdur 'Rahman v. Carpenter,* ---- F.3d ----, 2015 WL 6719715 at * 2 (6th Cir. Nov. 4, 2015) ("*Martinez* does not apply to excuse the default of a claim of ineffective assistance of appellate counsel"); *Bryan v. Bobby*, 2015 WL 4394371 at * 62 (N.D. Ohio July 15, 2015) (Carr. J.) (rejecting petitioner's argument that post-conviction counsel's failure to timely file 26(B) Application served as cause to excuse the default of his ineffective assistance of appellate counsel claims, noting "[t]hat argument lacks merit, as *Martinez* – which does not apply in Ohio in any event, *Williams v. Mitchell*, ---- F.3d ----- , 2015 WL 4079430 *7 (6th Cir.) - permits a court to excuse a default only of a claim that trial counsel was ineffective"); *Carter v. Bradshaw*, 2014 WL 1333179 at * 9 (N.D. Ohio March 31, 2014) (Pearson, J.) ("The Sixth Circuit has refused, however, to extend *Martinez* to allow the ineffectiveness of postconviction counsel to supply cause for the procedural default of a claim of ineffective assistance of *appellate* counsel")(emphasis in original); *Stein v. Warden, Ross Correctional Inst*., 2015 WL 1476411 at * 4 (S.D. Ohio March 31, 2015) (Merz, M.J.) ("*Martinez* and [*Trevino*] have to do only with excusing default of ineffective assistance of trial counsel claims, which is not at issue in this case.  The Sixth Circuit has expressly held that *Martinez* and *Trevino* do not apply to ineffective assistance of appellate counsel claims").

-28-

Accordingly, and pursuant to the above Supreme Court and Sixth Circuit precedent, the Court finds Jones' procedural default of his ineffective assistance of appellate counsel claims cannot be excused by the failure of his postconviction counsel to timely file a Rule 26(B) Application.[12]  It is therefore recommended that Jones' fifth ground for relief be dismissed as procedurally defaulted.

**C.    Grounds 1 and 2**

The parties dispute the nature of Jones' first and second grounds for relief.  Respondent characterizes these claims as challenging Jones' "inconsistent verdicts" at trial; i.e., the jury's determination that Jones was guilty of murder (Count 1) under Ohio Rev. Code § 2903.02(B) (a predicate of which is felonious assault) but not guilty of felonious assault (Count 2).  Respondent interprets the *pro se* Petition as challenging these "inconsistent verdicts" on due process, double jeopardy, and Sixth Amendment grounds.  Respondent argues Jones' double jeopardy and Sixth Amendment "subclaims" are procedurally defaulted.  (Doc. No. 18 at 2.)  With respect to Jones' due process subclaim, Respondent agrees it is not procedurally defaulted but argues it should be dismissed as noncognizable.  *Id*. at 1-2.

Jones strenuously disputes Respondent's interpretation of these claims.[13]  He argues

---

[12]  Because Jones has not established cause to excuse the default, this Court need not reach the issue of prejudice.  *See e.g. Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice"); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003) (same).

[13]  In his Brief regarding Procedural Default, Jones states that grounds 1 and 2 "mirror each other and seek relief under the same principles . . . . [t]herefore, for purposes of this brief, Mr. Jones merges these two claims, and refers to them herein collectively as 'Claim One.'" (Doc. No. 15 at 3.)  Jones similarly merges these claims in his Brief on the Merits. (Doc. No. 20 at 2.)

Respondent mischaracterizes his first and second grounds as seeking habeas relief on the basis of inconsistency in the jury's verdicts.  To the contrary, Jones asserts that "[i]t cannot be stressed enough that [he] is not seeking habeas relief for inconsistency of the verdicts."  (Doc. No. 15 at 12.)  Rather, Jones insists that "a proper reading" of the *pro se* Petition as a whole "sets forth the true substance of his claim, which is not defaulted."  (Doc. No. 15 at 11.)  Specifically, relying on *In re Winship*, 397 U.S. 358 (1970) and *Jackson v. Virginia*, 443 U.S. 307 (1979), Jones asserts his Petition seeks relief on a claim for the violation of "the Fifth Amendment's Due Process Clause because the state has failed to prove every element beyond a reasonable doubt." *Id*. at 11, 13.  Jones then argues his due process claim is not defaulted because "it is a federally cognizable claim, was fairly presented to the state courts, and was properly exhausted."[14]  *Id*. at 12.

In light of the parties' dispute over the "true substance" of these claims, the Court sets forth Jones' full recitation as set forth in his Petition:

**First Ground for Relief:**

When two offenses are charged in separate counts arising out of the same transaction, and one offense includes elements necessary to the commission of the other, due process and the bar against double jeopardy requires that an acquittal on one count forecloses a conviction for the other.

Petitioner was convicted of murder, O.R.C. §2903.02(B), a required element of which is the offense of felonious assault.  But the jury acquitted him of felonious

---

[14] Respondent argues at length in his Answer/Return of Writ that the Sixth Amendment and double jeopardy subclaims in grounds one and two are procedurally defaulted.  (Doc. No. 7 at 18-27.)  Jones does not address these arguments.  Instead, Jones treats grounds one and two as raising only a due process claim under the Fifth Amendment.  Thus, the Court assumes that, to the extent he intended to raise double jeopardy and Sixth Amendment subclaims in the context of his first and/or second ground for relief, Jones has abandoned them by failing to address them in the instant briefing.

assault, which means that the murder charge cannot stand, because the murder charge was dependent on the underlying felonious assault count.  Faced with what it concluded was an illogical and unworkable verdict, the trial court ordered a new trial.

The state appealed and the Eighth District reversed.  Characterizing the verdicts as merely inconsistent, the Eighth District maintained that *Ohio v. Adams*, 53 Ohio St.2d 223 (1978) and this court's holding in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471 (1984), permitted such verdicts.  Mr. Jones maintains that the Court mislabeled the verdicts by calling them as [sic] "inconsistent." Moreover, given the factual scenarios in *Adams* and *Powell*, calling the verdicts in Mr. Jones' case merely inconsistent, reflects a dramatic and unreasonable construction of that definition.

The Eighth District's construction is also in conflict with those reached in other States, which have concluded that where the accused is acquitted on an element essential to another count charged, he should also receive an acquittal on that charge.  Colorado, Connecticut, Florida, Georgia, Illinois, Iowa, Maryland, New York, North Carolina, North Dakota, and Rhode Island have all ruled that a conviction cannot be sustained whenever a jury finds a defendant not guilty of a count in which an act is charged which forms an essential element of the convicted count. [footnote omitted].  These states all recognize that when two offenses are charged in separate counts, arising out of the same transaction, and one offense includes elements necessary to the commission of the other, an acquittal of the one requires a reversal of the conviction of the other.

Petitioner's conviction violates the Fifth Amendment's Due Process Clause because the state has failed to prove every element beyond a reasonable doubt.  The Eighth District's opinion upholding that conviction is also based on a legal construction that violates Double Jeopardy by permitting the State to punish the accused twice for a single act.  The Fifth Amendment requires the prosecutor to prove every element of a crime beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  Under *Winship*, the state's failure to meet this burden must result in the defendant's acquittal.  *Id.* at 363.

Here, the jury unanimously acquitted Jones on felonious assault.  Felonious assault is an element of murder.  Simply put, if Jones did not hurt the child, then, as a legal and factual matter, he could not have killed that child.  Jones' jury expressly and unanimously found that the State had not met its burden of proof on the felonious assault, in light of all of the evidence presented.  Under the circumstances due process and the prohibition against double jeopardy renders the subsequent murder conviction unsustainable.

**Second Ground for Relief:**

-31-

Under the Fifth, Sixth, and Fourteenth Amendments a conviction must rest on a finding of guilt on all elements of an offense beyond a reasonable doubt. Where a Defendant is convicted of murder pursuant to O.R.C. 2903.02(B) and felonious assault is both the key element and the predicate, the conviction must be overturned where the jury acquitted the Defendant of the separate charge of felonious assault. Jones was convicted of a crime where the jury unanimously determined that he is not guilty of one of its elements. Since the jury unanimously determined that Jones was not guilty beyond a reasonable doubt of the key element of felonious assault his conviction on the murder charge cannot stand.

The Eighth District's conclusion that this issue was waived is not reasonable because the State's initial appeal – taken by leave before final judgment– was not taken from a final appealable order. Mr. Jones has not been able to have his issues on direct appeal heard by any court based on the Eighth District's ruling in *Jones II.* What occurred here violates his due process right to a direct appeal.

(Doc. No. 1-2 at 2-3.)

Jones claims a "proper reading" of the above indicates he is not seeking habeas relief on the basis of the jury's allegedly inconsistent verdicts but, rather, on the separate legal theory that his murder conviction violates due process because the State failed to prove each and every element of that offense beyond a reasonable doubt. On the State's appeal from the trial court entry granting him a new trial, Jones advanced this due process argument before the state appellate court, as follows:

The Jones conviction violates the federal Due Process Clause because the state has failed to prove every element beyond a reasonable doubt. The Due process clause of the Fifth Amendment requires the prosecutor to prove every element of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). Under the holding of *Winship*, the state's failure to meet this burden must result in the defendant's acquittal. *Id.* at 363. Here, the jury unanimously acquitted Jones on felonious assault. Felonious assault is an element of murder. The jury, with the presentation of facts it deemed insufficient to convict on felonious assault, convicted Jones of all of a murder charge that contains felonious assault as an element. Here, the jury has expressly and unanimously found Jones not guilty of felonious assault, in light of all of the evidence presented. The due process clause of the Fifth Amendment renders the subsequent murder conviction unsustainable.

(Doc. No. 7-1, Exh. 21 at Page ID 250-251.) The state appellate court soundly rejected this

-32-

argument:

{¶ 7} Ever since the United States Supreme Court decided the seminal case of *United States v. Dunn*, 284 U.S. 390, 52 S.Ct. 189 (1932), Ohio courts have held that "a verdict that convicts a defendant of one crime and acquits him of another, when the first crime requires proof of the second, may not be disturbed merely because the two findings are irreconcilable." *State v. Gardner*, 118 Ohio St.3d 420, 2008–Ohio–2787, 889 N.E.2d 995, ¶ 81. *See also State v. Gapen*, 104 Ohio St.3d 358, 2004–Ohio–6548, 819 N.E.2d 1047; *State v. Adams*, 53 Ohio St.2d 223, 374 N.E.2d 137 (1978).

{¶ 8} In *Dunn*, Justice Holmes announced that "[c]onsistency in the verdict is not necessary." *Dunn* at 393. The Supreme Court upheld Dunn's conviction of "maintaining a common nuisance by keeping for sale at a specified place intoxicating liquor," even though that conviction was inconsistent with his acquittals on charges for unlawful possession and unlawful sale of liquor. *Id.* at 391–394. The *Dunn* Court explained that lenity is an appropriate jury power, and while a verdict may result from compromise or mistake on the part of the jury, a judge should not upset the verdict by speculation into such matters. *Id.* at 394. The *Dunn* Court concluded that the acquittal resulted from the jury's lenity, and therefore, the jury's verdict did not necessarily " 'show that they were not convinced of the defendant's guilt.' " *Id.* at 393, quoting *U.S. v. Steckler*, 7 F.2d 59, 60 (2d Cir. 1925).

{¶ 9} " '[I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall for the Government at the defendant's expense.' " *Gardner* at ¶ 81, quoting *U.S. v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). "It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise or lenity, arrived at an inconsistent conclusion on the lesser offense." *State v. Woodson*, 24 Ohio App.3d 143, 144, 493 N.E.2d 1018 (10th Dist. 1985), citing *Powell* at 65. When the defendant receives the benefit of an acquittal on one count, it is not unjust to require the defendant to accept the jury's conviction on the second related count. *Powell* at 69. In reaffirming the rule established in *Dunn* and rejecting the defendant's argument, the *Powell* court explained:

> [T]he possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of *Dunn*'s alternative rationale—that such inconsistencies often are a product of jury lenity. Thus *Dunn* has been explained by both courts and commentators as a recognition of the jury's historical function, in criminal trials, to check against arbitrary or oppressive exercises of

-33-

power by the executive branch.

\* \* \*

We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error worked against them. Such an individualized assessment of the reason for inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.

\* \* \*

**Second, respondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficiency evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily—and erroneously—argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. *Powell* at 66–67.**

\* \* \*

{¶ 11} The jury found Jones guilty of Count 1, which states that Jones "did cause the death of [C.G.], as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree, to wit: Felonious Assault, in violation of Section 2903.02 of the Revised Code." By finding Jones guilty of Count 1, the jury had to have found that Jones killed the victim by committing a felonious assault upon him. The felonious assault element is included in the count itself. The fact that the jury acquitted Jones of Count 2, which alleged felonious assault alone, is not necessarily inconsistent. The court instructed the jury to consider the counts separately. Once the jury found Jones guilty of murder, which included the felonious assault, the second count of felonious assault could have been viewed as redundant.

*State v. Jones*, 2012 WL 760446 at \* 1-3 (Ohio App. 8th Dist. March 8, 2012) (emphasis added).

-34-

Jones insists the state courts misinterpreted his case as involving "inconsistent verdicts," thereby failing to address his federal due process claims under *Winship*.  The Court rejects Jones' attempt to recast grounds one and two of his *pro se* habeas Petition as seeking habeas relief on some ground other than the alleged inconsistency of the jury's verdicts.  The entire premise of Jones' argument herein is that his acquittal on the predicate offense of felonious assault necessitates a finding that the State failed to prove beyond a reasonable doubt that he committed felony murder under Ohio Rev. Code § 2903.02(B).  Jones does not assert (either in these habeas proceedings or in any of his state appellate briefing) that the specific evidence introduced at his trial was insufficient to have led a rational trier of fact to find him guilty on the charge of felony murder beyond a reasonable doubt.  Indeed, Jones makes no reference to any particular evidence introduced against him at trial, nor does he attempt to fashion an argument that such evidence was insufficient to support his murder conviction.

Rather, Jones' argument in regard to this claim (both here and in state court) is premised purely on the fact that he was acquitted on the predicate charge of felonious assault.  Based on this acquittal, Jones argues the jury must have found insufficient evidence to support the charge of felonious assault and, because felonious assault is a predicate of murder under Ohio Rev. Code § 2903.02(B), the jury should have found insufficient evidence to support the murder charge as well.

However, as the Supreme Court noted in *United States v. Powell*, 469 U.S. 57, 67 (1984), the argument "that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem."  Rather, that Court expressly cautioned that sufficiency of the evidence review

-35-

"should not be confused with the problems caused by inconsistent verdicts." *Id*. As the Court

explained:

> Sufficiency-of-the evidence review involves assessment by the courts of whether
> the evidence adduced at trial could support any rational determination of guilt
> beyond a reasonable doubt. *See Glasser v. United States*, 315 U.S. 60, 80, 62
> S.Ct. 457, 469, 86 L.E.d. 680 (1942); Fed. R. Crim Proc. 29(a); cf. *Jackson v.
> Virginia,* 443 U.S. 307, 316, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
> This review should be independent of the jury's determination that evidence on
> another count was insufficient.

*Id*. Here, Jones could have raised a sufficiency of the evidence argument under *Jackson v.*

*Virginia*, 443 U.S. 307, 316, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) that the evidence

introduced at trial was insufficient to prove an element of the offense of murder; i.e., the

underlying predicate offense of felonious assault. However, Jones did not do so. To the extent

Jones is attempting to now argue that his first and second grounds for relief should be construed

as  stating such a claim, the Court rejects this argument.

Having determined that the first and second grounds of Jones' Petition seek habeas relief

on the sole basis that the alleged inconsistency of the verdicts violated his federal due process

rights,[15] the Court now turns to the question of whether these claims are procedurally defaulted.

The Court first notes, however, that it agrees with Jones that these claims "mirror each other and

seek relief under the same principles." (Doc. No. 15 at 3.) Thus, the Court will hereinafter refer

to Jones' inconsistent verdict due process claim simply as "ground one."

With regard to the procedural status of this claim, the Court notes that Respondent has

---

[15]As noted *supra*, Jones failed to address Respondent's argument that the double jeopardy
or Sixth Amendment "subclaims" set forth in grounds one and two are procedurally
defaulted.  Indeed, Jones does not acknowledge these "subclaims" at any point in his
Brief regarding Procedural Default or Merits Brief.  Accordingly, the Court deems these
claims waived.

taken the position this claim is not defaulted.  (Doc. No. 18 at 1-2.)  Rather, Respondent contends

Jones' due process claim is noncognizable and fails to set forth a federal constitutional claim.  *Id.*

at 2.  In the alternative, Respondent argues that "this claim is without merit and that the Ohio

courts' decision rejecting the claim on the merits is entitled to AEDPA deference."  *Id.*

Given Respondent's position that ground one is not procedurally defaulted, the Court is

not inclined to undertake an independent procedural default analysis of this claim.  Rather, and in

light of the lack of opposition on this issue, the Court accepts that Jones' due process claim

regarding the alleged inconsistency of the verdicts is not defaulted.

As noted above, on September 14, 2015, this Court ordered Jones "to brief the merits of

Grounds One and Two only, which the Court construes as a single ground challenging the

constitutionality of Jones' conviction on the basis that the allegedly inconsistent verdicts violated

his federal due process rights."  (Doc. No. 19 at 2-3.)  Specifically, the Court ordered Jones to

"address Respondent's arguments that this claim is noncognizable or, in the alternative, without

merit under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §

2254."  *Id.* at 3.

Jones filed his "Merit Brief for Claims One and Two" on October 13, 2015.  (Doc. No.

20.)  Therein, Jones repeats, at length, the arguments raised in his previous brief (Doc. No. 15)

regarding the "true nature" of these claims, which he again merges and treats as one.

Specifically, Jones maintains in his merits brief that both the state courts and Respondent

misconstrued this claim as an inconsistent verdict claim, rather than a due process claim based on

the State's alleged failure to prove every element of his felony murder conviction.  Jones then

goes on to assert that, because the state courts failed to rule on the merits of his due process claim

-37-

(as Jones characterizes it), his "habeas claim must be reviewed by this Court *de novo*." *Id*. at 6. Finally, relying on a series of Florida state cases, Jones argues he is entitled to habeas relief[16] because "an essential element of Ohio's felony murder statute, Ohio Revised Code § 2903.02(B), has not been proven" and Jones' "right to due process was violated because the state failed to prove every element of the offense beyond a reasonable doubt." *Id*. at 14.

As noted above, the Court is not swayed by Jones' argument that grounds one and two seek habeas relief on some ground other than the alleged inconsistency of the jury's verdicts. This claim is premised entirely on the fact that the jury acquitted Jones of felonious assault but convicted him of felony murder; i.e., that the jury's verdicts were inconsistent. Jones' attempt to recast this argument as a sufficiency of the evidence challenge is unpersuasive, particularly in light of the fact that Jones makes no argument that the specific evidence introduced at trial was insufficient to satisfy the elements of felonious assault.

Having so determined, the question then becomes whether Jones can prevail on the merits of this claim. The Court finds that he cannot. In his Brief on the Merits, Jones acknowledges that "[a] habeas claim for inconsistent verdicts is not a federally cognizable claim." (Doc. No. 20 at 2.) A number of federal district courts agree. *See e.g., Cunningham v. Palmer*, 2010 WL 891152 at * 5 (E.D. Mich. March 10, 2010) ("Any alleged inconsistency in a state court verdict is therefore a non-cognizable claim on federal habeas review") (citing *Smith v. Herbert*, 275

---

[16] Jones explains that he is not requesting "an outright dismissal of the state charges." (Doc. No. 20 at 15.) Rather, he requests the Court issue a writ of habeas corpus directing the state trial court to reopen his case in order to reconsider and properly address his motion for acquittal pursuant to Ohio Rule of Criminal Procedure 29. *Id.* Alternatively, Jones request the Court issue a writ directing the state appellate court to reopen his direct appeal. *Id.*

F.Supp.2d 361, 371 (E.D. N.Y. 2003)); *Midds v. Booker*, 2015 WL 5679839 at * 5 (E.D. Mich. September 28, 2015); *Williams v. Rapelje*, 2014 WL 2587643 at * 6 (E.D. Mich. June 10, 2014); *Daniels v. McKee*, 2009 WL 2351767 at * 5 (W.D. Mich. July 29, 2009). *See also Harris v. Rivera*, 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981)("Inconsistency in a verdict is not a sufficient reason for setting it aside"); *Drake v. Superintendent, Trumbull Correctional Inst.,* 1997 WL 14422 at * 4-5 (6th Cir. Jan. 14, 1997) ("Inconsistent verdicts may not form the basis for setting aside proper convictions on other counts"); *Freeman v. Lebanon Correctional Inst., Superintendent*, 1999 WL 801573 at * 2 (6th Cir. Sept. 28, 1999) ("Nonetheless, it is noted that mere inconsistency in a jury's verdict does not warrant habeas corpus relief in any event").

Accordingly, and in the absence of any argument to the contrary, the Court finds Jones' first and second grounds for relief are non-cognizable on federal habeas review.   It is therefore recommended that these grounds be denied.

## VI.  Conclusion

For the foregoing reasons, it is recommended that Grounds 3, 4, 5 and 6 of Jones' Petition be dismissed as procedurally defaulted.  With respect to Grounds 1 and 2, it is recommended the Court find that these grounds assert the same claim; i.e., that Jones' federal due process rights were violated by the alleged inconsistency of the jury's verdicts in his underlying state court trial. It is further recommended that Grounds 1 and 2 be denied as non-cognizable.

Accordingly, and for all the reasons set forth above, it is recommended that Jones'

Petition be DENIED.


/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: December 9, 2015


## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Repo rt and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-40-